IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JIMMY BALDWIN,

                Plaintiff,
  v.

RICK RAEMISCH, RANDALL HEPP,
C. SEMANKO, WARREN DOHMS,
SARA A. KIEKHOEFER, N. CARLSON,
CAPTAIN BUESGEN, and C.O. SWEENY,

                Defendants.

OPINION and ORDER

18-cv-872-jdp

---

Pro se plaintiff Jimmy Baldwin is an inmate at Columbia Correctional Institution. He brings this civil complaint under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Fourteenth Amendment by extending his mandatory release date and sentencing him to a year of segregation based on allegations that he had been involved in a forgery and escape plot. Baldwin contends that he was found guilty based on insufficient evidence, which defendants did not give him adequate opportunity to contest in the disciplinary hearing. He also brings a separate claim for malicious prosecution against Warren Dohms based on Dohm's involvement in bringing later-dropped criminal charges against Baldwin. Baldwin has made an initial partial payment of the filing fee under 28 U.S.C. § 1915(b)(1).

The next step is for me to screen his complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. Because Baldwin is a pro se litigant, I must read his allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam).

After reviewing Baldwin's complaint with these principles in mind, I conclude that that all but one of his claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). His remaining claim for malicious prosecution must also be dismissed because it does not amount to a constitutional violation. Although his allegations might state a state-law tort claim for malicious prosecution, Baldwin does not meet the threshold requirements for diversity jurisdiction. I will therefore dismiss Baldwin's case.

ALLEGATIONS OF FACT

I draw the following facts from Baldwin's complaint, Dkt. 1, along with the documents he attaches, which may be considered as part of the complaint itself. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). Although Baldwin is now incarcerated at CCI, the incidents at issue in his complaint took place when he was incarcerated at Stanley Correctional Institution (SCI) and concern SCI staff.

On November 24, 2009, an "amendment" to Baldwin's judgment of conviction was executed. This amendment reduced Baldwin's sentence from 73 years to 45 years. In December, defendant Sara Kiekhoefer, a social worker at SCI, met with Baldwin to discuss this amended judgment. Because Baldwin had served beyond the mandatory release date on a 45-year sentence, he was now eligible for early release subject to approval by the parole commission. Baldwin told Kiekhoefer that he was confused, because he had not litigated any sentence modification and was unaware of anyone else having done so on his behalf. He asked Kiekhoefer whether she was sure that they had the right "Baldwin," and Kiekhoefer indicated that the SCI records office staff had done a thorough check.

On December 7, Baldwin appeared before a parole commission member, Defendant N. Carlson. Carlson questioned Baldwin about the amended judgment. Baldwin indicated that it had come as a surprise to him, and that he could only think it was one of the "Christmas Early Release Reviews" that had long been a subject of rumors among inmates. Carlson recommended Baldwin for release. Ultimately, Baldwin was released from SCI on January 19, 2010. While out on release, Baldwin stayed in Milwaukee, made no attempt to flee the area, and complied with the conditions of his parole.

On January 26, 2010, defendant Warren Dohms, captain of security at SCI, learned that the amended judgment of conviction was not authentic. Baldwin was quickly apprehended and reincarcerated. Over the course of two months, Dohms investigated the matter. When a search of the Wisconsin court records website revealed no record of any motion to amend Baldwin's judgment of conviction, defendant C. Semanko, the records supervisor at SCI, sent a scanned copy of the suspect documents to the Milwaukee County clerk of courts. June Simeth, the court staff responsible for amended judgments, confirmed that the documents appeared to be a "cut and paste job." Dkt. 1, ¶ 19.

On March 29, Baldwin received a conduct report accusing him of escape and of counterfeiting and forgery, Dkt. 1-1, at 11, and a form informing him of his "major disciplinary hearing rights." *Id.*, at 15. That form indicated that the hearing would be held no sooner than two days after the date he received the conduct report and that he would be allowed to present evidence, question adverse witnesses, and request his own witnesses. Baldwin submitted a form requesting four witnesses: Simeth; Dohms; a fellow inmate (as a character witness); and an "unknown writer" referred to in Dohms's conduct report. Dkt. 1-1, at 21. In his complaint, Baldwin says that the request for the "unknown writer" referred to "the Records Office Staff

member" who "provided [Dohm] with the Information that caused him to initially begin his investigation (Defendant C. Semanko)." Dkt. 1, at 12. Ultimately, Dohms and Semanko both testified at the hearing. Baldwin's other witness requests were denied.

Baldwin was also assigned a staff advocate, whom he asked to gather two pieces of evidence that he says are exculpatory: First, he asked for a written statement from Kiekhoefer attesting to Baldwin's numerous requests for assurances whether she was positive that the early release was legitimate. Second, he asked for a copy of the parole hearing proceedings in front of Carlson, which would demonstrate that Baldwin had expressed surprise about the early release.

The major disciplinary hearing took place on March 31, 2010, at 12:40 p.m. in front of defendants Buesgen and Sweeny. Baldwin had received the March 29 conduct report at 4:30 p.m., so the two full days promised in the "major disciplinary hearing rights" form had not yet elapsed. And because of the compressed timeframe, the staff advocate had not yet had time to gather the evidence he requested.

At the outset of the hearing, Baldwin voiced objections to the lack of two full days' notice, the denial of his requests for witnesses, and the fact that his staff advocate had not yet had time to gather his requested evidence. The hearing committee ignored Baldwin's objections and did not note them on the official hearing record. Baldwin submitted a written statement in which he denied forging any documents and complained that there had not been a full investigation. Dkt. 1-1, at 22. Over Baldwin's objections, the hearing committee members then had Baldwin placed in a holding cell while they privately interviewed Semanko via telephone. When they were done, they reconvened the hearing and found Baldwin guilty of violating the institutional rules. The hearing committee imposed a disposition of eight days of adjustment

segregation; 360 days of program segregation; and ten days' denial of good behavior credit toward his mandatory release entitlement.

Baldwin appealed the hearing committee's decision to the SCI warden, but the warden affirmed the committee's guilt finding. Baldwin then filed a grievance through the Inmate Complaint Review System (ICRS), alleging procedural errors. That grievance was dismissed. Baldwin then filed an application for writ of certiorari in Dane County Circuit Court, but the writ was ultimately quashed. He then appealed it to the court of appeals, which affirmed the decision to quash. He missed the deadline for filing a petition for review with the Wisconsin Supreme Court.

Baldwin alleges that, in the meantime, Dohms was working with local law enforcement to file criminal charges against him and other SCI prisoners thought to be implicated in forging amended judgments of conviction. In December 2012, Baldwin attended a preliminary hearing on the criminal charges in Chippewa County Circuit Court. At that hearing, Baldwin's lawyer elicited testimony from Dohms that Baldwin's fingerprints had never been found on any of the suspect documents, and that there was no direct evidence linking him to the inmate whose fingerprints were found on the documents. Dkt. 1-1, at 48–49. Ultimately, in July 2014, the charges against Baldwin were dropped for lack of evidence. *Id.* at 53.

The year Baldwin spent in segregation took a serious toll on his physical and mental health, and caused him to start thinking about self-harm. He seeks declaratory relief and damages based on defendants' alleged violation of his due process rights during and after the disciplinary hearing.

5

ANALYSIS

Baldwin contends that the disciplinary hearing committee found him guilty without due process in violation of the Fourteenth Amendment because (1) he was not permitted to call the witnesses of his choice; (2) neither he nor his staff advocate were permitted to remain in the hearing room while the committee interviewed Semanko; (3) he and his staff advocate were given insufficient opportunity to gather and present evidence in his defense; (4) he was provided insufficient access to legal assistance; and (5) defendants intentionally failed to create a proper record of the disciplinary hearing, knowing that it would preclude any meaningful review of their conduct. Baldwin also asserts a separate claim against Dohms based on Dohms's cooperation with law enforcement in bringing criminal charges; Baldwin says Dohms's cooperation constitutes malicious prosecution given the lack of any direct evidence implicating Baldwin in the forgery scandal.

## A.  Disciplinary hearing-related claims

The due process clause of the Fourteenth Amendment to the United States Constitution provides some rights to prisoners who face a disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). But even if I assume that Baldwin might have a claim under the due process clause, he cannot bring that claim in a civil suit under 42 U.S.C. § 1983 because he is challenging a decision that led to a loss of good time. Under *Preiser v. Rodriguez*, 411 U.S. 475 (1973), prisoners cannot use § 1983 to challenge the loss of good time because it goes to the duration of their confinement, something that is covered by a petition for a writ of habeas corpus under 28 U.S.C. § 2254. In other words, if a prisoner's contention is that officials have lengthened his time in prison in violation of the Constitution, § 2254 represents the sole

remedy in federal court and that remedy is available only after the prisoner has exhausted his remedies in state court.

Baldwin's complaint does not include a request for restoration of his good-time credits; he asks for declaratory relief and money damages instead. But in *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that even if a prisoner is not asking for earlier release as a remedy, a suit under § 1983 is not an option if success on the claim would necessarily *imply* that he is entitled to be released sooner than the date calculated by his custodian. In light of *Heck*, prisoners cannot seek damages (or a declaratory judgment as a predicate to a damages award) under § 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 487.

Although *Heck* involved a prisoner's challenge to his conviction, the Supreme Court later extended its holding to bar claims that would necessarily imply the invalidity of a prison disciplinary decision that was the basis for depriving a prisoner of good-time credits. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997). As a result, under current law, "[s]tate prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek habeas corpus, because they contest the fact or duration of custody." *Moran v. Sondalle*, 218 F.3d 647, 650–51 (7th Cir. 2000).

This leaves Baldwin with two potential avenues of relief. He could try to get the conviction reversed, expunged, or declared invalid by a state court or by an executive order and then pursue relief under § 1983. Alternatively, he could file a petition for writ of habeas corpus

under 28 U.S.C. § 2254, although this would require him to exhaust his remedies in state court beforehand. In reality, these avenues are likely foreclosed to him because he missed the deadline for filing an appeal to the Wisconsin Supreme Court. Regardless, Baldwin cannot challenge the process afforded him at the disciplinary proceedings through a § 1983 suit when the disciplinary decision that resulted remains valid.

Perhaps anticipating this problem, Baldwin concludes his complaint by arguing that *Heck* should not apply because the loss of good-time credit merely extended his "mandatory release date." Dkt. 1, at 34. He notes that his "mandatory release date" is not in fact mandatory; it only requires release if the parole commission approves, which is no sure thing. *See* Wis. Stat. § 302.11. This matters, he says, because certain courts have held that claims challenging the revocation of good-time credits are cognizable in habeas only if success will "'*necessarily* spell speedier release' from custody," as opposed to simply creating an increased likelihood or "mere potential to . . . affect the length of a petitioner's confinement." *Nettles v. Grounds*, 788 F.3d 992, 995 (9th Cir. 2016) (quoting *Skinner v. Switzer*, 562 U.S. 521, 535 n.13 (2011)), *aff'd in relevant part on reh'g en banc*, 830 F.3d 922 (9th Cir. 2016). That means that § 1983, not habeas, should the proper vehicle for prisoners with indeterminate sentences seeking to challenge the revocation of good-time credits.

But the case Baldwin relies on is from the Ninth Circuit and is not binding here. In the Seventh Circuit, binding precedent directs courts to dismiss § 1983 claims challenging disciplinary proceedings that resulted in the revocation of good-time credits. *See, e.g.*, *Wilks v. Rymarkiewicz*, 667 F. App'x 549, 551 (7th Cir. 2016) (dismissal of Wisconsin prisoner's case seeking damages and restoration of good-time credit was required under *Heck*, and such dismissal was proper at the screening stage). This is so even though restoring Baldwin's good-

8

time credits might not actually make much of a difference in determining when he is ultimately released, given the discretionary nature of his parole. *Cf. Haywood v. Hathaway*, 842 F.3d 1026, 1028–30 (7th Cir. 2016) (*Heck* barred prisoner's suit seeking damages for revocation of good-time credits, even though prisoner purported to waive any challenge related to the duration of his confinement). The point is that a judgment in Baldwin's favor here would imply the invalidity of his disciplinary conviction and punishment, which is disallowed by *Heck*.

Because Baldwin is seeking declaratory relief and money damages for a claim that challenges the validity of his sentence, I cannot address his claims. If Baldwin is successful in invalidating his current sentence, he may refile this action. For now, I must dismiss his claims without prejudice. *See Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011) (dismissals on the basis of *Heck* are without prejudice).

**B. Malicious prosecution by Dohms**

Baldwin alleges a separate count against Dohms based on Dohms's cooperation with the Chippewa County Sheriff's Department in bringing the later-dropped criminal charges against Baldwin in connection with the forgery conspiracy. He alleges that Dohms "was fully aware . . . that there was no actual evidence of [Baldwin's] involvement with the altered 'amended judgment of conviction' . . . other than his 'personal belief' that . . . Baldwin simply had to be somehow involved, because he benefitted from this altered amended judgment." Dkt. 1, at 42–43.

Because this allegation does not derive from the disciplinary hearing conviction, Baldwin's claim is not barred by *Heck*. Even so, Baldwin has failed to allege a constitutional violation. "[T]here is no free-standing constitutional tort of malicious prosecution, though there are other constitutional rights . . . that protect people against abusive arrests, fabrication

9

of evidence, etc." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018) (citing *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)). Baldwin does not allege that the dropped criminal charges culminated in an abusive arrest, implicated fabricated evidence, or resulted in deprivation of his liberty. He alleges only that he was prosecuted without sufficient evidence of guilt. But "there is no such thing as a constitutional right not to be prosecuted without probable cause," *Serino v. Hensley*, 735 F.3d 588, 592 (7th Cir. 2013), so Baldwin has not stated a constitutional claim against Dohms based on his involvement in the criminal investigation.

It is possible that Baldwin's allegations suffice to state a claim for the state-law tort of malicious prosecution. *See Wisconsin Pub. Serv. Corp. v. Andrews*, 2009 WI App 30, ¶ 23, 316 Wis. 2d 734, 766 N.W.2d 232 (listing the elements of a malicious-prosecution claim under Wisconsin law). But the only way I can exercise jurisdiction over state-law claims of this nature is if Baldwin can show that the Dohms is a citizen of a state other than Wisconsin, and that more than $75,000 is in controversy. *See* 28 U.S.C. § 1332. It does not appear that Baldwin will be able to make either showing, so I will dismiss his claim for lack of subject-matter jurisdiction.

ORDER

IT IS ORDERED that:

1. Plaintiff Jimmy Baldwin's disciplinary hearing-related claims are DISMISSED for failure to state a claim upon which relief may be granted.

2. Baldwin's malicious prosecution claim is DISMISSED for lack of subject-matter jurisdiction.

3. The clerk of court is directed to enter judgment for defendants and close the case.

Entered January 24, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge